# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| PETER S. WILLMOTT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05 C 1124 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| FEDERAL STREET ADVISORS, INC., | ) | Magistrate Judge |
| a Massachusetts corporation, and | ) | Martin C. Ashman |
| BANK OF AMERICA, N.A., | ) | |
| a Federally Chartered National Bank, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In this motion, Defendant, Bank of America, N.A. ("Bank of America"), asks the Court to strike objections made by Rose Marie Erwin ("Erwin") at her deposition, and to compel her to answer. (Def.'s Mem. at 1.) This matter was referred to this Court by Judge Kendall in accordance with 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.1. For the reasons stated below, this Court grants Defendant's motion in part and denies the motion in part.

### I. Background

Plaintiff, Peter Willmott ("Willmott"), alleges that his executive assistant, Erwin, defrauded him by misusing her access to Willmott's business and personal checking accounts with Bank of America. (Def.'s Mem. ¶1.) Shortly after Willmott hired Erwin in December 1998 he made Erwin an approved signatory to and gave her powers of attorney over his accounts at Bank of America. (*Id.*) Over the course of her employment with Willmott, Erwin withdrew

from the accounts millions of dollars for her personal benefit and for her family's benefit. (Def.'s Mem. ¶2.) Erwin concealed her actions by intercepting bank statements and destroying cancelled checks. (*Id.*) Erwin's embezzlement scheme was eventually discovered, and she has since pled guilty to certain federal charges brought against her. (Def.'s Mem. ¶3.) She is currently incarcerated at the Federal Correctional Institution in Pekin, Illinois. (Def.'s Mem. ¶3.)

In this case, Willmott seeks recovery from Bank of America and Federal Street Advisors ("Federal Street") of the embezzled money. Willmott's claims against Bank of America and Federal Street are based on breach of contract, negligence, breach of fiduciary duty, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act. (Def.'s Mem. ¶4.)

In connection with these claims, Bank of America sought Erwin's deposition, and on September 23, 2005, Judge Castillo granted Bank of America leave to take Erwin's deposition, which Bank of America did along with Federal Street on May 25, 2006 ("May 25 Deposition"). (Def.'s Mem. ¶6.) At this deposition, Erwin initially answered questions asked of her. (*See* Def.'s Mem. ¶8; Dep. Tr., May 25, 2006.) In response to questioning, Erwin stated that she in fact stole from Willmott. (Dep. Tr., May 25, 2006, at 21 ln. 1 to 31 ln. 17.) After a period of questioning, Erwin stated that she would not answer any further questions, and she invoked her Fifth Amendment privilege against self-incrimination in response to further questioning by Bank of America and Federal Street. (Dep. Tr., May 25, 2006, at 32 ln. 1 to 36 ln. 18.) Bank of America and Federal Street continued to question Erwin, and in response Erwin continued to invoke her Fifth Amendment privilege. After Erwin continued to invoke her Fifth Amendment privilege, counsel for Bank of America and Federal Street terminated the deposition. (Dep. Tr.,

May 25, 2006, at 34 ln. 12 to 36 ln. 23; Def.'s Mem. ¶10.) They then filed this motion before this Court.

Prior to the filing of this motion, Erwin was deposed in connection with her bankruptcy petition filed in the United States Bankruptcy Court for the Northern District of Illinois. (*See* Def.'s Reply at 3 n.1.) This deposition took place on November 15, 2005 ("November 15 Deposition"). In it, Erwin testified that she was fired from her job at Madison Dearborn Partners–the job she held immediately prior to working for Willmott–for missing too much work. (Dep. Tr., Nov. 15, 2005, at 21 lns. 6-21.) She also stated at the November 15 Deposition that she embezzled from Willmott. (Dep. Tr., Nov. 15, 2005, at 135 ln. 17 to 136 ln. 24.)

Bank of America seeks in this motion to strike Erwin's Fifth Amendment objections and to compel her to answer four questions, all of which were asked at the May 25 Deposition. Those questions are as follows: "(a) Do you recognize [Exhibit Three]?; (b) Do you recall having any conversations with Peter Willmott about what's contained in Exhibit Three?; (c) Why did you leave Paul Madison Dearborn Partners' employment?; [and] (d) Did you have any discussions with [Willmott] about cash management guidelines?" (Def.'s Mem. ¶13 (citations omitted). *See also* Dep. Tr., May 25, 2006, at 33 ln. 13 to 34 ln. 6.)

## II. Discussion

The question whether a person may properly invoke her Fifth Amendment privilege against self-incrimination is ultimately a question for the Court to decide. *Hoffman v. United States*, 341 U.S. 479, 486 (1951) ("It is for the court to say whether [the person's] silence is justified."). In order to properly invoke the privilege, allowing the person to refuse to answer,

- 3 -

"the answer . . . must have *some* tendency to subject the person being asked the question to criminal liability." *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 663-64 (7th Cir. 2002) (emphasis in original). A person claiming this privilege does not have *carte blanche* to invoke the privilege at every whim. *Hoffman*, 341 U.S. at 486 ("The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself–his say-so does not of itself establish the hazard of incrimination."); *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d at 663. Rather, the person invoking the privilege must have some objectively reasonable cause to perceive some real danger of prosecution that would result if she answers the question asked of her. This perception must be real and not imaginary or fanciful. *United States v. Apfelbaum*, 445 U.S. 115, 128 (1980) ("The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination.") (quoting *Rogers v. United States*, 340 U.S. 367, 374 (1951)). *Cf. In re High Fructose Corn Syrup Antitrust Litig.*, 293 F. Supp. 2d 854, 860-61 (C.D. Ill. 2003) (finding that the privilege was not properly invoked where the statute of limitations had run on the crime for which the witnesses feared prosecution).

While it is true that the person invoking the Fifth Amendment must have some real fear of prosecution, the Court must also bear in mind that the privilege is to be liberally construed. *Hoffman*, 341 U.S. at 486. The focus of the inquiry is not on the likelihood of whether the person will in fact face prosecution, but instead the focus is on whether there is some possibility of prosecution. *In re Folding Carton Antitrust Litig.*, 609 F.2d 867, 872 (7th Cir. 1979) ("[T]he right to assert one's privilege against prosecution 'does not depend upon the Likelihood, but upon the Possibility of prosecution." (citation omitted)). The privilege applies to answers that would

themselves increase the possibility of prosecution, and it also extends to answers that "would furnish a link in the chain of evidence needed to prosecute the claimant." *Hoffman*, 341 U.S. at 486. Whether a person may properly invoke her Fifth Amendment privilege must be determined on a question-by-question basis. *See Rogers*, 340 U.S. at 374.

Assuming a person's answers may increase her possibility of prosecution, the next question the Court must address is whether the person has waived her right to claim the Fifth Amendment privilege. A person has waived her Fifth Amendment privilege if she previously answered questions on the same particular subject. *See id.* at 373. The Court will not lightly infer that a person has waived her right. *Smith v. United States*, 337 U.S. 137, 150 (1949); *In re Werer*, No. 91 B 10816, 1992 WL 167625, at *3 (Brtcy. N.D. Ill. July 7, 1992). Rather, the Court must "indulge every reasonable presumption against . . . waiver." *In re Werer*, 1992 WL 167625, at *3 (citing *Emspak v. United States*, 349 U.S. 190, 198 (1955)). At the same time, a person may not disclose a fact and then refuse to disclose the details surrounding that fact, essentially turning the privilege into a shield. *Rogers*, 340 U.S. at 373 ("[W]here criminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the details."). Put another way, "[d]isclosure of a fact waives the privilege as to details." *In re Werer*, 1992 WL 167625, at *3 (citing *Corrugated Container Antitrust Litig.*, 661 F.2d 1145, 1158 (7th Cir. 1981)).

In her Response, Erwin admits that she cannot properly assert her Fifth Amendment privilege with respect to questions (a) and (b). (Erwin Resp. at 3.) Therefore, Bank of America's motion is granted with respect to questions (a) and (b). Bank of America may ask Erwin

questions (a) and (b), and Erwin must respond. The issue remains as to whether Erwin can invoke her Fifth Amendment privilege and refrain from answering questions (c) and (d).

### A. Question (c): Reasons for Leaving Madison Dearborn

Erwin claimed her Fifth Amendment privilege in response to Bank of America's question as to why she ceased employment with Madison Dearborn Partners. (Def.'s Mem. ¶13. *See also* Dep. Tr., May 25, 2006, at 33 lns. 20-22.) In support of her Fifth Amendment claim, Erwin argues that discussion of why she left Madison Dearborn will reveal her "motivations" for leaving, and discussion of those motivations "would include statements regarding criminal intent as well as assertions detailing attempts to conceal criminal behavior." (Erwin Resp. at 3-4.) Although this statement remains cryptic in Erwin's brief, Willmott's counsel stated at oral argument that Erwin had previously been involved in a suit brought by Madison Dearborn, where Madison Dearborn alleged that Erwin had stolen from Madison Dearborn during her employment. (Oral Arg., Sept. 6, 2006.) Although the suit by Madison Dearborn was eventually dismissed, Erwin argued at oral argument on the instant motion that the Madison Dearborn suit is illustrative of the risk of additional state prosecution Erwin faces if compelled to testify regarding the circumstances of her leaving Madison Dearborn. (Oral Arg., Sept. 6, 2006.)

The Court agrees with Erwin that her testimony surrounding her leaving Madison Dearborn may expose her to an increased risk of state criminal liability. The circumstances suggest that it is possible that Erwin was fired in part because she may have stolen from Madison Dearborn. Requiring Erwin to answer deposition questions regarding why she left Madison Dearborn's employ would create a real possibility–not fanciful or imaginary–of additional state

prosecution. As Erwin points out in her Response, under the "dual sovereignty" principle, a person's conviction—or guilty plea—in federal court does not preclude the state from pursuing a criminal conviction against that person based on the same facts. (Erwin Resp. at 4.) With this in mind, even though Erwin is guilty of the federal counts against her, she is still at risk of additional state prosecution.

Nevertheless, despite this possibility of additional prosecution, the Court is convinced that Erwin has waived any Fifth Amendment objection she may have had as to this line of questioning. In the November 15 Deposition, Erwin testified that she had been employed by Madison Dearborn for two years and that she left because she was fired. (Dep. Tr., Nov. 15, 2005, at 21 lns. 9-12.) She further clarified that she was fired for "missing too much time from work." (Dep. Tr., Nov. 15, 2005, at 21 lns. 13-21.) Although Erwin did not reveal any facts relating to whether or not she stole from Madison Dearborn, in answering these questions as to why she left Madison Dearborn, Erwin has disclosed the fact of her being fired from her job at Madison Dearborn. Because she has disclosed this fact, she may not shield the details by claiming her Fifth Amendment privilege against self-incrimination. Although the Court believes that Erwin may increase her risk of further state prosecution if the details surrounding her termination from Madison Dearborn reveal additional nefarious activities, the Court finds that Erwin has waived her right to claim her Fifth Amendment privilege by answering questions regarding her termination from Madison Dearborn at her November 15 Deposition. For this reason, the Court finds that Erwin must answer questions relating to her being fired from Madison Dearborn. In other words, Erwin must answer question (c).

B.  **Question (d): Cash Management Guidelines**

Erwin argues that her answers to the question whether she "[had] discussions with [Willmott] about cash management guidelines" will increase her risk of state prosecution, meaning that her exercise of her Fifth Amendment privilege was properly invoked. (Erwin Resp. at 4.) According to Erwin, if she answers in the affirmative–that she did have conversations about cash management guidelines–this would tend to show that she was "acutely aware of the fraudulent nature of her conduct." (Erwin Resp. at 4.) Erwin has stated that her answer to this question may potentially subject her to state prosecution for deceptive practices, fraud, or forgery. (Erwin Resp. at 5.) In its reply, Bank of America argues that because Erwin already admitted in her May 25 Deposition and her November 15 Deposition that she embezzled Willmott's money, conversations about cash management guidelines would not make her more "acutely aware of the fraudulent nature of her conduct." (Def.'s Reply at 5.) In other words, Willmott is equating Erwin's admission of her embezzlement with being "acutely aware of the fraudulent nature of her conduct."

Bank of America misunderstands how Erwin's answer to this question might increase her possibility of prosecution. Erwin does not dispute that she did in fact embezzle millions of dollars from Willmott. The question here relates to whether Erwin was aware–via conversations with Willmott–of Willmott's cash management guidelines. If Erwin understood the cash management guidelines, this may provide the level of mental culpability necessary for state crimes such as fraud and deceptive practices, where heightened knowledge of cash management guidelines would suggest a greater culpability because, not only would Erwin have stolen, but she also would have knowingly flouted proper protocol in order to do so. Even if Erwin's

knowledge of the cash management guidelines is not in itself sufficient to provide an otherwise missing mental element in a state prosecution, her knowledge need only provide "a link in the chain of evidence." *Hoffman*, 341 U.S. at 486. This Court is satisfied that Erwin's answer to question (d) may provide this link. Put another way, the Court is convinced that Erwin's fears are not fanciful, and that Erwin's further answering would present a real possibility of additional prosecution. Again, as discussed in the analysis of question (c), the mere fact that Erwin was convicted in federal court does not preclude future state action on these facts, and Erwin's fears of additional state prosecution are real.

This Court also finds that Erwin did not waive her right to claim her Fifth Amendment privilege against self-incrimination. Erwin's statements about the theft relate to her embezzlement scheme, but they do not touch on the cash management guidelines or her knowledge of them, and the two sets of facts are distinct. Whether she had discussions with Willmott regarding cash management guidelines is not a detail of her theft. Erwin has never testified as to the fact of her conversations with Willmott touching on the cash management guidelines, and her admission of her embezzlement does not waive her privilege against self-incrimination as to conversations about cash management guidelines. Thus, Erwin has not waived her Fifth Amendment privilege against self-incrimination as it pertains to her discussions with Willmott regarding the cash management guidelines. Therefore, she may appropriately invoke her Fifth Amendment privilege against self-incrimination. This Court holds that Bank of America and Federal Street may not compel Erwin to answer question (d).

### III. Conclusion

For the foregoing reasons, the Court grants Bank of America's motion in part and denies it in part. Erwin has waived her Fifth Amendment privilege as it pertains to question (c), and she must answer Bank of America's and Federal Street's questions as to the details of her leaving Madison Dearborn. Erwin has properly invoked her Fifth Amendment privilege as it pertains to question (d), and she need not state whether she had conversations with Willmott regarding cash management guidelines.

**ENTER ORDER:**

_____
MARTIN C. ASHMAN
United States Magistrate Judge

Dated: October 13, 2006.

Copies have been mailed to:

CHARLES FRANKLIN, Esq.
HAROLD ROSEN, Esq.
HARRY O. CHANNON, Esq.
JEFFREY A. SCHULMAN, Esq.
Wolin and Rosen
55 West Monroe Street
Suite 3600
Chicago, IL 60603

Attorneys for Plaintiff

JAMES A. SHAPIRO, Esq.
BEAU B. BRINDLEY, Esq.
Shapiro & Schwartz
222 North LaSalle Street
Suite 200
Chicago, IL 60601

Attorneys for Rose Erwin

MITCHELL A. ORPETT, Esq.
GLENN W. FISCHER, Esq.
KURT B. DRAIN, Esq.
Tribler Orpett and Meyer, P.C.
225 West Washington Street
Suite 1300
Chicago, IL 60606

LAWRENCE M. BENJAMIN, Esq.
ALTHANASIOS PAPADOPOULOS, Esq.
Neal, Gerber & Eisenberg, L.L.P.
Two North LaSalle Street
Suite 2200
Chicago, IL 60602

Attorneys for Defendants