IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PETER S. WILLMOTT, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05 C 1124 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| FEDERAL STREET ADVISORS, INC. and | ) | |
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff Peter S. Willmott ("Willmott" or "Plaintiff") brings suit against Federal Street

Advisors, Inc. ("Federal Street") and Bank of America, N.A. ("BOA") for various state law

violations in contract and in tort. The Complaint against Federal Street and BOA arises as a result

of embezzlement from Willmott's accounts by Rose Erwin ("Erwin"), Willmott's personal secretary,

that resulted in Erwin's criminal conviction. Willmott now seeks to recover against Federal Street

and BOA for violations of their agreements with Willmott that Willmott alleges facilitated Erwin's

criminal conduct.

BOA has filed two motions pursuant to Federal Rule of Civil Procedure 16(c) to address

specific legal issues that BOA alleges bar Plaintiff's claims.[1] First, BOA moves for a determination

that any damages Plaintiff seeks in Count VI of Plaintiff's Amended Complaint - breach of contract -

are properly characterized as consequential damages and are not recoverable. Because some of the

---

[1] At this time, Federal Street has not filed dispositive motions regarding any of Plaintiff's claims. Therefore, this Memorandum Opinion and Order addresses only Plaintiff's claims against BOA. The Court has disregarded any statements in either party's Statements of Material Facts that concerning the relationship between Federal Street and Willmott.

damages are direct and some of the damages are consequential, and consequential damages are barred by the terms of the contract, the Motion is granted in part and denied in part. Second, BOA moves to eliminate all the claims against it claiming that they are barred by the Illinois Fiduciary Obligations Act. Because the Court finds that a genuine material fact exists as to whether Erwin was acting as Willmott's authorized fiduciary, this Motion is denied.

Facts

Willmott is a resident of Illinois who has been a director of various large companies since the 1970's. BOA's Statement of Undisputed Facts ("BOA 56.1 Facts") at ¶ 1, 5. Willmott used BOA's "Private Bank" services and maintained checking and deposit accounts, lines of credit, and custodial accounts with collateral for the lines of credit. *Id.* at ¶ 6. Willmott had two separate lines of credit at the Bank, each established pursuant to written loan agreements (the "Loan Agreements"). *Id.* at ¶ 15; Willmott's Statement of Additional Undisputed Facts ("Willmott 56.1 Facts") at ¶ 11. Willmott also had a checking account #5423309 (the "Checking Account") through BOA. BOA 56.1 Facts at ¶ 10. Several employees at BOA worked in the Private Bank division and worked with Willmott's various accounts, although the parties dispute the scope of their relationship with Willmott's finances. Willmott 56.1 Facts at ¶¶ 1-6.

In December 1998, Willmott hired Erwin as his executive assistant. Am. Cmplt. at ¶ 10. Willmott hired Erwin to replace Joan Noble, his prior executive assistant, in whom he had given substantial authority over his financial affairs. BOA 56.1 Facts at ¶ 9. Willmott expected Erwin to provide the same services as Ms. Noble. *Id.* Two months after Erwin had been hired, Willmott executed and delivered an unconditional power of attorney that empowered Erwin to write checks on the Checking Account. *Id.* at ¶ 10. The terms of the Checking Account agreement with BOA

required Willmott to review his monthly statements and report any unauthorized transactions to BOA. *Id.* at ¶ 13.

According to Willmott, from February 1999 through May 2004 Erwin abused her authority by writing $11 million in checks drawn on the Checking Account for the benefit of herself and her family. *Id.* at ¶ 11. Willmott fired Erwin immediately when he discovered the fraud in May 2004. *Id.* at ¶ 12. Erwin pled guilty to criminal prosecution for embezzlement and is currently serving a prison term. *Id.*

During the period from February 1999 through May 2004, BOA disbursed advances on Willmott's lines of credit of approximately $18 million, over the course of 120 separate draws. *Id.* at ¶ 16. Willmott claims that BOA breached the Loan Agreements by honoring Erwin's draw requests because the Loan Agreements prohibited BOA from permitting advances on the lines of credit without a written authorization on file, and Erwin did not have Willmott's written authorization. *Id.* at ¶ 18. Willmott executed two letters to BOA around the same time as he granted full authorization to Erwin to draw on the Checking Account, each of which granted Erwin "Power of Attorney over my accounts to sign checks, do wire transfers, and wire funds" and included a list of some account numbers and some prior loan confirmation numbers. *Id.* at ¶ 19.

Willmott admits that some of the advances on the lines of credit were authorized by him, but disputes that the two letters gave blanket authorization to Erwin to draw on the lines of credit. *Id.* at ¶ 20, BOA's Second Statement of Material Facts ("BOA Second 56.1 Facts") at ¶ 16. The two employees who were responsible for the banking relationship when Willmott hired Erwin testified that they believed Erwin was authorized to make requests for draws from the lines of credit. BOA

Second 56.1 Facts at ¶ 12.  All of the BOA employees who dealt with Erwin testified that prior to May 2004 they never had any suspicions about Erwin.  *Id.* at ¶ 11.

All of the advances on the lines of credit (other than rollovers from previous loans) were deposited into the Checking Account.  BOA 56.1 Facts at ¶ 21.  Erwin embezzled the funds by writing checks from the Checking Account, for which she had authorization.  *Id.* at ¶ 11.  Willmott has asserted that the damages from Erwin's conduct can be calculated by assessing the difference between the amount Erwin advanced from the lines of credit and the amount of credit Willmott legitimately needed, calculated as the difference between his legitimate expenses over the period and his deposits over the same period.  *Id.*  at ¶ 24.

## Discussion

BOA moves for Rule 16(c) clarification via two separate motions.  The first motion seeks to clarify as a matter of law that the money Erwin embezzled from the Checking Account is properly characterized as consequential damage from any breach of the Loan Agreements, and to clarify that Plaintiff cannot recover consequential damages from BOA because the terms of the Loan Agreements bar suits to recover consequential damages.  The second motion seeks to eliminate all of the counts against BOA - breach of contract, breach of fiduciary duty, negligence, and deceptive trade practices - on the theory that the claims are barred by the Illinois Fiduciary Obligations Act, 760 ILCS 65/1 *et seq.*  Because the second motion potentially disposes of all claims, including the claim at issue in the first motion, the second motion is addressed first.

Rule 16(c)(1) allows a court to take any action regarding "the formulation and simplification of the issues, including the elimination of frivolous claims or defenses."  Fed. R. Civ. P. 16(c)(1).  The Advisory Committee Notes regarding subsection (c) clarify that "formulation" of issues "is

intended to clarify and confirm the court's power to identify the litigable issues. . . in the hope of promoting efficiency and conserving judicial resources by identifying the real issues prior to trial, thereby saving time and expense for everyone." Comments to Rule 16(c); *see also Premier Transport, Ltd. v. Nextel Communications, Inc.*, 2003 WL 21267096 (N.D. Ill. June 2, 2003) (addressing a Rule 16(c)(1) motion to dismiss plaintiff's consequential damages claim). The parties have completed the discovery necessary to reach the merits of the particular claims at issue in these motions and have filed statements of material facts in accordance with the standards governing summary judgment. Therefore, the motions will be treated as motions for partial summary judgment pursuant to the requirements of Rule 56. *Accord Premier Transport*, 2003 WL 21267096 at *2.

Motions pursuant to Rule 56(c) shall be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). Summary judgment is appropriate where there is no genuine issue as to any material fact. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). This Court views evidence and draws all reasonable inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill, Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Once a moving party has demonstrated that summary judgment is appropriate, the opposing party must do more than "simply show that there is some metaphysical doubt as to material facts" to defeat the motion. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 547, 586-87 (1986). A "mere scintilla of evidence" is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252.

I.  The Effect of the Fiduciary Obligations Act on Plaintiff's Claims against BOA.

The Fiduciary Obligations Act (the "Act"), 760 ILCS 65/1 *et seq.*, governs claims made by a principal against a bank or other financial institution for acts arising out of interaction between the bank and the principal's authorized agent.  The Act states in relevant part:

> If a check is drawn upon the account of his principal in a bank by a fiduciary who is empowered to draw checks upon his principal's account, the bank is authorized to pay such check without being liable to the principal, unless the bank pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in drawing such check, or with knowledge of such facts that its action in paying the check amounts to bad faith.

760 ILCS 65/8.  The Act was designed "to cover situations which arise when one person honestly deals with another knowing him to be a fiduciary."  *Appley v. West*, 832 F.2d 1021 (7th Cir. 1987) (applying Illinois law).

BOA argues that this portion of the Act bars recovery against BOA in its entirety because Erwin was an authorized fiduciary who drew checks upon Willmott's Checking Account.  BOA claims that Willmott cannot show evidence of bad fath or knowledge of the embezzlement on the part of BOA, and therefore Willmott's actions for breach of contract, negligence, breach of fiduciary duty, and deceptive trade practices are all barred by the Act.

Willmott argues that BOA misunderstands his position and the basis for his claims against BOA.  He does not dispute that Erwin was an "empowered fiduciary" with respect to the Checking Account.  Willmott instead bases his claim on the Loan Agreements.  Since Willmott alleges that he did not empower Erwin as his fiduciary with respect to the Loan Agreements, the Act does not bar claims against BOA for negligence and breach of the Loan Agreements.   Had  BOA not breached the Loan Agreements by permitting Erwin to draw down the letters of credit under the Loan

Agreements, argues Willmott, Erwin would not have had access to those funds via the Checking

Account, and Willmott would not have been damaged - or at least not damaged to the same extent.

In essence, Plaintiff seeks to tie all damages, in addition to all liability, to BOA's conduct

regarding the Loan Agreements - ignoring the Checking Account. BOA, on the other hand, argues

that this case is entirely about the Checking Account, such that it has no liability for its conduct with

respect to the Loan Agreements. In order to address these issues fairly, the Court divides its

discussion of the Act's application into two parts: liability and damages.

A.  Liability under the Act

The Act creates a defense for a defendant bank to allegations of negligence raised by a

principal for relying upon the instructions of an authorized fiduciary. *Appley*, 832 F.2d at 1030-31.

The Act purposely narrowed common law liability, which held a third-party liable if it "assisted a

fiduciary in misappropriating a principal's funds" regardless of whether that third-party had

knowledge of the misappropriation. *Id, citing Maryland Cas. v. Bank of Charlotte*, 340 F.2d 550,

553 (4th Cir. 1965). The Act shifts the burden from the financial institution to the principal such

that it "becomes the principal's burden to employ honest fiduciaries." *Johnson v. Citizens' Nat.

Bank of Decatur*, 334 N.E.2d 295, 298 (Ill. App. Ct. 1975). Although the Act relieves a bank of

liability for negligence, if the bank had actual knowledge of the misappropriation or had "knowledge

of sufficient facts" such that its inaction amounts to bad faith, the bank can be held liable. *Appley*,

832 F.2d at 1031. Willmott bears the burden to show that there was "knowledge of sufficient facts"

to constitute bad faith and allow an action under the Act to continue. "At some point, obvious

circumstances become so cogent that it is 'bad faith' to remain passive." *Id.*

Insofar as BOA seeks to use the Act as a defense to allegations regarding BOA's conduct under the Loan Agreements, the Act does not provide BOA with a complete defense to liability. Section 8 of the Act absolves a bank of liability when it relies in good faith upon the instructions of an "authorized fiduciary." *See Mutual Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 624 (7th Cir. 2001) (denying use of the defense when a employee not a fiduciary on the account); *see also Zions First Nat'l Bank v. Clark Clinic Corp.*, 762 P.2d 1090 (Utah 1988) (denying summary judgment on the Uniform Fiduciary Act because genuine issue of material fact existed as to whether the agent was an authorized fiduciary within the meaning of the Act).[2] While BOA focuses on the absence of evidence of bad faith, the Court's analysis stops prior to any such argument - because there exists a genuine issue of material fact as to whether Erwin was an "authorized fiduciary" empowered to draw on the Loan Agreements such that the Act would apply at all.

With respect to the Checking Accounts, the parties do not dispute that Erwin was an authorized fiduciary empowered to make draws. *See* BOA 56.1 Facts at ¶ 10. But material facts remain in dispute with respect to the scope of Erwin's authorization as a fiduciary empowered to make draws on the lines of credit. "It is the agent's specific authority to receive the proceeds of checks drawn to the bank's order which is crucial to the bank's ability to invoke the [Act]." *Elizabeth State Bank*, 265 F.3d at 624. Willmott testified that Erwin did not have his written authorization to draw on the lines of credit governed by the Loan Agreements. Bank officials testified that they were aware that Erwin was authorized but that they did not remember specific written authorization. The written correspondence between the parties is ambiguous. Whether or

---

[2] Illinois 760 ILCS 65/1 *et seq.* is an adoption of the text of the Uniform Fiduciaries Act. As few cases in Illinois discuss the statute, the Court looks to persuasive authority from the highest authorities in other states that have also adopted the Uniform Fiduciaries Act.

not Erwin was an "authorized fiduciary" empowered to act on the Loan Agreements is a central and disputed fact that will determine whether or not the Act provides a defense to liability for BOA with respect to the Loan Agreements. *See Elizabeth State Bank*, 265 F.3d at 623-25 (holding the Act inapplicable as a defense when the agent was not a fiduciary on that account, even though he was an authorized fiduciary on another account); *accord Larson v. Kleist Builders, Ltd.*, 553 N.W.2d 281 (Wis. App. 1996) (stating "from the plain and unambiguous language of the [Act], for the statute to apply, [withdrawer] would have to have been the [principal's] fiduciary"), *citing Johnson*, 334 N.E.2d 295. Therefore, the Motion to Eliminate Counts VI - X[3] is denied as to potential liability under the Loan Agreements.

   B.  Damages under the Act

   Although the Act is not a defense to liability under the Act, this finding does not necessarily imply that Willmott will be able to recover the damages he seeks from BOA.   The parties do not dispute that all of the money that was drawn from the lines of credit went into the Checking Account before it was withdrawn by Erwin.   In light of the issues raised in the Motion to Eliminate Count VI, addressed in the following section, any assessment of damages from Erwin's embezzlement will require: (i) a separation of damages stemming from BOA's conduct under the Loan Agreements, BOA's conduct under the agreement underpinning the Checking Account, and BOA's duties to Willmott under any other theory; and (ii) to the extent Willmott seeks to obtain damages from BOA for losses from the Checking Account, a valid theory that entitles him to those damages in light of Willmott's Erwin's position as an authorized fiduciary on that Account.   With the exception of

---

[3] The Court dismissed Count IX with prejudice on September 23, 2005.

damages under Count VI, addressed below, these issues were not briefed by the parties and more appropriate for a motion *in limine* regarding admissibility of damages evidence.

II.  Motion to Eliminate Damages from Count VI

BOA filed a separate Motion to Eliminate Count VI, the breach of contract claim against BOA.   Willmott claims that BOA breached the Loan Agreements when it allowed Erwin to draw on the lines of credit even though she was not authorized to do so.   As discussed above, the parties have raised a genuine issue of material fact as to whether Erwin was authorized to draw on the lines of credit.  However, BOA seeks to Eliminate Count VI on separate grounds that Willmott cannot establish that he is entitled to damages for the breach.

According to BOA, because the claims against BOA stem from the Loan Agreements but the damages stem from withdrawals from the Checking Account, any damages owed to Willmott by BOA are consequential damages from a breach of the Loan Agreements.   According to BOA, consequential damages in this case are not recoverable on two grounds: (i) these damages were unforeseeable and therefore unrecoverable as a matter of law, and (ii) all consequential damages are barred by the specific terms of the Loan Agreements regardless of foreseeability.   Therefore, BOA claims that Willmott cannot plead the element of damages for his breach of contract claim and that claim should be eliminated.

There are two types of damages from a breach of contract: direct damages and consequential damages.  *Rexnord Corp. v. DeWolff Boberg & Assoc., Inc.*, 286 F.3d 1001, 1004 (7th Cir. 2002). The difference lies in the "degree to which damages are a foreseeable (that is, highly probable) consequence of a breach." *Id.* at 1004; *accord Linc Equipment Svcs., Inc. v. Signal Med. Svcs, Inc.*, 319 F.3d 288, 289 (7th Cir. 2003).   While direct damages may be awarded upon proof of a breach,

consequential damages may be awarded only if those damages were "reasonably foreseeable." *Linc*, 319 F.3d at 289.

With respect to the availability of consequential damages, Illinois follows the established rule that "the costs of the untoward consequence of a course of dealings should be borne by that party who was able to avert the consequence at least cost and failed to do so." *Evra Corp. v. Swiss Bank Corp.*, 673 F.2d 951, 957 (7th Cir. 1982) (applying principle of *Hadley v. Baxendale* to bank's failure to authorize a transfer); *accord Rexnord*, 286 F.3d at 1004. This doctrine bears similarity to the well-recognized common law doctrine of avoidable consequences. *See Evra*, 673 F.2d at 957-58.

A. Willmott's Damages from Erwin's Embezzlement were Consequential Damages.

To the extent BOA breached the Loan Agreements by allowing unauthorized draws on the lines of credit, the embezzled funds from the Checking Account are not direct damages flowing from the breach. Damages that naturally result for the breach are recoverable. *Heritage Commons Partners v. Village of Summit*, 935 F.2d 1489 (7th Cir. 1991) (applying Illinois law). Any breach by BOA in this case resulted in money moving from the lines of credit into the Checking Account, both owned by Willmott. If BOA had permitted an unauthorized draw on the lines of credit payable directly to Erwin, or to a third party, then the lost money would be a "natural result" of BOA's breach. But it is undisputed that BOA placed the funds drawn on the lines of credit into another account owned and controlled by Willmott.

Erwin gained possession of the funds when Erwin moved funds out of the Checking Account. It is undisputed that Erwin had the authorization to take the money from the Checking Account. Willmott Resp. to BOA 56.1 Facts at ¶ 10. Claim VI alleges solely that BOA breached the Loan

Agreements by allowing draws on the lines of credit by an unauthorized individual, Erwin. Yet it is undisputed that regardless of the factual dispute about authorization, all of the drawn funds were deposited the Checking Account. A customer has no legitimate claim for damages items that were improperly paid when those very funds were redeposited or otherwise recovered by the customer. *Ed Stinn Chevrolet, Inc. v. National City Bank*, 503 N.E.2d 524, 537 (Ohio 1987) (monies stolen from cash box were consequential and not direct damages of bank's improper deposit into cash account via forged check); *see also Wiest v. First Citizens National Bank*, 1966 WL 8972 (Pa. Com. Pl. 1966) (holding that an employer could not claim that he sustained "actual consequent damage" when an employee transferred funds from the employer's inactive account to the employer's active account, and then stole the funds).

While a breach by BOA may have facilitated Erwin's access to the funds, BOA's action in drawing on the lines of credit and placing the funds in the Checking Account did not itself naturally result in Erwin's possession of the funds. Willmott's decision to allow a third party, Erwin, unlimited access to the Checking Account, and Erwin's embezzlement scheme involving the Checking Account, were each intermediate steps that separate direct damages from consequential damages. Had BOA allowed Erwin to draw the lines of credit into her own account, or into another account not owned by Willmott, then the damage would directly result from the breach. But regardless of whether BOA's conduct constituted a breach, the result of BOA's conduct in this case was to move funds between accounts owned by Willmott; the funds did not leave his control without his own intermediate acts and those of Erwin. Therefore, the damage to Willmott is a consequence of BOA's act, but is not a direct result.

B.  Consequential Damages are Barred by the Terms of the Loan Agreements

Each of the Loan Agreements, signed by Willmott after consulting with counsel, contains the

following paragraph:

> 10.13 Waiver of Jury Trial.  THE BORROWER AND THE BANK EACH WAIVES
> ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO
> ENFORCE OR DEFEND ANY RIGHTS (a) UNDER THIS AGREEMENT OR
> ANY RELATED AGREEMENT OR UNDER ANY AMENDMENT,
> INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY
> IN THE FUTURE BE DELIVERED IN CONNECTION WITH THIS
> AGREEMENT OR (b)  ARISING FROM ANY BANKING RELATIONSHIP
> EXISTING IN CONNECTION WITH THIS AGREEMENT, AND AGREES THAT
> ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT
> AND NOT BEFORE A JURY.  THE BORROWER AGREES THAT IT WILL NOT
> ASSERT ANY CLAIM AGAINST THE BANK OR ANY OTHER PERSON
> INDEMNIFIED UNDER THIS AGREEMENT ON ANY THEORY OF LIABILITY
> FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE
> DAMAGES.

Am. Cmplt. At Ex. A**.**   This Court has already upheld the applicability of the first portion of this

paragraph regarding waiver of right to trial by jury.  *See* Aug. 31, 2005 Minute Order.

The section contains an exculpatory clause that Willmott will not assert a claim against the

bank on a theory of special or consequential damages.  Willmott claims that this clause in the Loan

Agreements is unenforceable.  Illinois law generally enforces exculpatory clauses on the theory that

competent parties are free to make their own agreements and allocate their own risks.  *See McClure*

*Eng'ring Assocs. V. Reuben H. Donnelley Corp.*, 447 N.E.2d 400, 402-03 (Ill. 1983).  Exculpatory

clauses will not be held unenforceable unless they are unconscionable as the product of unreasonable

bargaining power or in violation of public policy.  *See Premier Transport*, 2003 WL 2127096 at *4

(surveying Illinois law).  "The party seeking to avoid the effect of the exculpatory clause carries the

burden of proving it should not be enforced." *Premier Transport*, 2003 WL 21267096 at * 4, *citing*

*Reuben H. Donnelley Corp. v. Krasny Supply Co.*, 592 N.E.2d 8 11 (Ill. App. Ct. 1991).

The Loan Agreements' exculpatory clauses are not unconscionable. Willmott does not

dispute that he is a sophisticated businessman with financial expertise. *See* Pltf. Resp. Def. 56.1

Facts at ¶5. Willmott also admitted at his deposition that he believed he reviewed the BOA

agreements with his counsel before he signed them. Willmott Tr. II pg. 388, BOA Appx. Vol. 1, Ex.

B. Courts have upheld exculpatory clauses against customers signing form agreements between

large companies and single customers for cell phones and pick-up trucks; BOA has demonstrated

that there is no genuine issue of material fact that Willmott had the business sophistication to be

aware of the exculpatory clause that he signed. *See Smith v. Navistar Int'l Trans. Corp.*, 957 F.2d

1439, 1445 (upholding exculpatory clause in truck warranty when customer read the terms and

conditions and failed to ask any questions before signing); *Premier Transport*, 2003 WL 21267096

at * 5 (upholding exculpatory clause in cell phone because evidence on difference in market power

alone insufficient to establish unenforceability).

Likewise, public policy does not prohibit an exculpatory clause that limits remedies to a

plaintiff but does not absolve the other party of liability. The exculpatory clauses in the Loan

Agreements do not absolve BOA of liability or in any way limit direct damages from a breach by

BOA. Instead, they limit the extent of Willmott's remedies. This important difference distinguishes

*Jewelers Mutual Ins. Co. v. Firstar Bank Illinois*, the case upon which Willmott relies. 820 N.E.2d

411 (Ill. 2004). In *Jewelers*, the Illinois Supreme Court struck down an exculpatory clause in a

safety deposit box agreement between a customer and a bank. But that clause, unlike the one in the

Loan Agreements, was more than a mere limitation on the type of damages that could be collected;

it absolved Firstar Bank of *any* liability for damage to the contents of the box. *Id.* at 414-15. In this case, by contrast, BOA does not argue - nor could it argue - that the exculpatory clause limits direct damages as a result of BOA's breach.

The narrow issue before the Court on this Motion is whether Willmott could, as matter of law, obtain damages for Erwin's embezzlement from the Checking Account as a result of BOA's alleged breach of the Loan Agreements. Since the damages from actions in the Checking Account are properly classified as consequential damages from breaches of the Loan Agreements, and since the Loan Agreements specifically exclude this type of damages, Willmott may not pursue recovery of those damages via Count VI of the Complaint, the breach of contract claim.

C.  Potential Damages

Having limited Willmott's ability to recover the embezzled funds under Count VI, however, this limitation does not mean that Count VI should be dismissed. If BOA is found liable for breach of contract, to the extent that Willmott claims direct damages from BOA's breaches those damages are recoverable.  For example, if Willmott prevails on his breach of contract claim and seeks the recovery of the interest he paid on the letters of credit that were drawn down as a result of the breach, those damages are directly attributable to BOA's conduct, as Willmott would not have incurred interest on the lines of credit had BOA not authorized the release of the funds.

Likewise, as stated in the previous discussion of the application of the FOA, Willmott may have the possibility to recover some or all of the embezzled funds from BOA under some other theory of liability.  As BOA itself concedes:

> it is possible that Willmott's alleged loss might be characterized as direct damages under some theory of recovery other than what is alleged in Count VI . . . Erwin's theft might also be characterized as a direct loss resulting from the Bank's alleged

breach of its purported common-law duty to discover and prevent Erwin's fraud - a theory alleged by plaintiff in Count VII and VIII of the amended complaint. But that duty, if it exists, is not a contractual duty imposed on the Bank under the loan agreement and is not relevant to the disposition of Count VI.

Def. Mem. Count VI at 8-9 (citations omitted). As with the Fiduciary Obligations Act, if Willmott has a valid theory of damages under one of the other theories of liability that would entitle him to the monies taken from the Checking Account, he may pursue that theory.

Conclusion

Because Willmott has demonstrated a genuine issue of material fact regarding Erwin's status as Willmott's authorized fiduciary, the Motion to Eliminate Counts VI, VII, VIII and X on the basis of the Fiduciary Obligations Act is denied. Because Willmott may prove liability under Count VI but may not recovery consequential damages under Count VI, the Motion to Eliminate Count VI is granted as to the requested limitation on damages but denied in part as to the request to eliminate the claim in its entirety.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: December 19, 2006